UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | § |
| | § |
| **v.** | § |
| | §  EP-22-CR-01140-DCG-1 |
| **(1) JAMES DOUGLAS JORDAN,** | § |
| | § |
| *Defendant.* | § |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The Government charges Defendant James Douglas Jordan with violating a federal statute barring felons from possessing firearms and ammunition. Indictment, ECF No. 4; *see also* 18 U.S.C. § 922(g)(1). Claiming that the felon-in-possession statute no longer passes constitutional muster after the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), Defendant moves to dismiss the indictment. Mot., ECF No. 28.

The Fifth Circuit has repeatedly rejected other criminal defendants' arguments that the felon-in-possession statute violates the Second Amendment. Although those decisions pre-date *Bruen*, the Court remains unconvinced that *Bruen* overturned those holdings. In any event, under Fifth Circuit precedent, a district court lacks the power to declare that an intervening Supreme Court decision overturns an otherwise binding Fifth Circuit case. And even if this Court did have that power, it would follow the weight of post-*Bruen* authority from district courts in this Circuit upholding the statute. The Court therefore rejects Defendant's constitutional challenge to 18 U.S.C. § 922(g)(1) and **DENIES** Defendant's motion to dismiss the indictment.

## I.    BACKGROUND

The Government alleges that, on or about July 10, 2019, Defendant knowingly possessed a firearm and ammunition that had travelled in and affected interstate and foreign commerce.[1] Indictment at 1.  Defendant has two prior felony convictions: a 2011 conviction for conspiring to defraud the United States, and a 2014 conviction for theft and securities fraud.  Mot. at 2, 13–14; *see also* Resp., ECF No. 31, at 2–3.  The Government therefore charges Defendant with violating 18 U.S.C. § 922(g)(1), *see* Indictment at 1, which makes it "unlawful for any person . . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce[] any firearm or ammunition," 18 U.S.C. § 922(g).

The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend II.  Defendant claims that 18 U.S.C. § 922(g)(1) violates the Second Amendment by barring him from keeping and bearing arms.  *See generally* Mot.  Defendant therefore moves to dismiss the indictment.[2]  *See id.* at 1, 14.

---

[1] Specifically, the Government alleges that Defendant possessed "a Taurus[] model PT58 SS, .380 ACP caliber, semi-automatic handgun" and "9 rounds of .380 auto ammunition."  Indictment at 1.

[2] On December 5, 2022—nearly a month after the Government filed its Response opposing Defendant's Motion, *see* Resp.—Defendant filed a Reply in support of his Motion, *see* Reply, ECF No. 33.

Unlike this Court's Local Civil Rules, *see* W.D. TEX. L.R. CV-7(e)(1) ("A party may file a reply in support of a motion."), the Court's Local Criminal Rules do not explicitly authorize parties to file replies in support of criminal motions, *see* W.D. TEX. L.R. CR-47 (authorizing parties to file either "motions" or "responses").  Because the civil rules mention replies but the criminal rules do not, I interpret the Local Rules to forbid parties from filing replies in criminal cases without first obtaining the Court's leave, which Defendant has not requested.  *Cf., e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) (opining that where a law "includes particular language in one section" but "omits it in another section," a court should "generally presume[]" that the law's drafter "act[ed] intentionally and purposely in the disparate inclusion or exclusion" (cleaned up)).

## II.   DISCUSSION

A.   **Fifth Circuit Precedent**

The Fifth Circuit has held or otherwise stated in numerous binding, published opinions that the Second Amendment does *not* prohibit Congress from barring felons from possessing firearms.[3]

1.   *Emerson*

The earliest such opinion is *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), in which the Fifth Circuit considered a Second Amendment challenge to a different subsection of Section 922(g)—specifically, 18 U.S.C. § 922(g)(8)(C)(ii), which prohibits "any person . . . . who is subject to a court order that . . . . explicitly prohibits the use, attempted use, or threatened use of physical force against [an] intimate partner or child that would reasonably be expected to cause bodily injury" from possessing firearms.

Based on a lengthy analysis of the Second Amendment's text and history, the *Emerson* court first determined that the Second Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training,

---

Even if Defendant had sought leave before filing his Reply, the Court would ordinarily be reluctant to grant it.  Defendant filed his Reply 27 days after the Government filed its Response—nearly three weeks after Defendant's reply deadline would have expired if this were a civil motion.  *See* W.D. TEX. L.R. CV-7(e)(2) ("A reply in support of a motion shall be filed not later than 7 days after the filing of the response to the motion.").

Nevertheless, given the importance of the issues that the Motion and Reply raise, the Court will consider Defendant's Reply.

[3] The Fifth Circuit has also reached that same holding in non-binding, unpublished decisions too numerous to list here.  *See, e.g.*, *United States v. Gipson*, 182 F. App'x 340, 340 (5th Cir. 2006).

to privately possess and bear their own firearms."[4]  *See* 270 F.3d at 227–60.  The Fifth Circuit explained, however, that although

> the Second Amendment does protect individual rights, that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country.

*Id.* at 261 (emphasis omitted).  For instance, the panel quoted from a law review article stating that "Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics, *and felons* from possessing firearms."  *Id.* at 226 n.21 (cleaned up) (emphasis added) (quoting Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 OKLA. L. REV. 65, 96 (1983)); *see also id.* ("Nor does it seem that the Founders considered felons within the common law right to arms or intended to confer any such right upon them." (quoting Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 MICH. L. REV. 204, 266 (1983))).  The *Emerson* panel thus opined in *dicta* that "it is clear that *felons*, infants and those of unsound mind *may be prohibited from possessing firearms*."  *Id.* at 261 (emphasis added).  Applying that general principle to the facts of the case, the panel held that Section 922(g)(8)(C)(ii), "as applied to Emerson, d[id] not infringe his individual rights under the Second Amendment."  *Id.* at 260.

### 2. *Darrington*

About two years later, the Fifth Circuit elevated *Emerson*'s *dicta* to a binding holding in *United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003).  The defendant in *Darrington*

---

[4] The Supreme Court would later adopt a similar holding and analytical framework in *District of Columbia v. Heller*.  *See* 554 U.S. 570, 576–619 (2008) (concluding, based on the Second Amendment's text and structure—as well as "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century"—that "the Second Amendment confer[s] an individual right to keep and bear arms").

challenged the constitutionality of 18 U.S.C. § 922(g)(1)—the same statute that Defendant challenges here. *Id.* at 633–34. Cross-referencing *Emerson*'s historical citations indicating "that legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment," the *Darrington* court held that "Section 922(g)(1) does not violate the Second Amendment." *Id.* (citing *Emerson*, 270 F.3d at 226 n.21, 261).[5]

### 3. *Everist*

Shortly thereafter, the Fifth Circuit held once again in *United States v. Everist* that "[i]t is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and possess firearms." 368 F.3d 517, 519 (5th Cir. 2004). Even though the Fifth Circuit had upheld Section 922(g)(1) in *Darrington* just a few months earlier, *Everist* did not cite or otherwise acknowledge that binding precedent. *See id.* Instead, the *Everist* court independently decided—just as the *Darrington* court had—that the *Emerson* panel's statement that "felons . . . may be prohibited from possessing firearms" defeated the defendant's constitutional challenge to Section 922(g)(1). *See id.* (quoting *Emerson*, 270 F.3d at 260–61).

### 4. *Anderson*

Several years later, in *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009), the Fifth Circuit considered whether *Darrington* survived the Supreme Court's intervening decision in *District of Columbia v. Heller*, which invalidated the District of Columbia's ban on possessing usable handguns in the home. Because the *Heller* Court insisted that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by

---

[5] *See also United States v. Chavarria*, 377 F.3d 475, 482 (5th Cir. 2004), *vacated on other grounds*, 543 U.S. 1111 (2005) (following *Darrington*'s holding); *United States v. Mares*, 402 F.3d 511, 516 (5th Cir. 2005) (same).

felons," the *Anderson* court determined that *Heller* did not undermine *Darrington*.  559 F.3d at 352 & n.6 (cleaned up) (quoting *Heller*, 554 U.S. 570, 626 (2008)).  The Fifth Circuit therefore "reaffirm[ed] *Darrington* and the constitutionality of § 922(g)."[6]  *Id.* at 352.

### 5. *Scroggins*

The following year, the Fifth Circuit explicitly reaffirmed *Emerson*, *Darrington*, *Everist*, and *Anderson* in its published opinion in *United States v. Scroggins*, which reiterated "that criminal prohibitions on felons (violent or nonviolent) possessing firearms" do not violate the Second Amendment.  599 F.3d 433, 451 (5th Cir. 2010).

### 6. *Massey*

Most recently, in *United States v. Massey*, the Fifth Circuit adhered to its ruling in *Anderson* that Section 922(g)(1) does not violate the Second Amendment.  849 F.3d 262, 265 (5th Cir. 2017) (citing *Anderson*, 559 F.3d at 352 & n.6).

## B. *Bruen*

Notably, however, all of the above-cited Fifth Circuit cases predate the Supreme Court's recent opinion in *New York State Rifle & Pistol Ass'n v. Bruen*, which modified the legal standard courts must apply when determining whether a firearms regulation violates the Second Amendment.  *See* 142 S. Ct. at 2125–30.  Defendant maintains that *Bruen* requires this Court to

---

[6] The Fifth Circuit later abrogated *Anderson* to the extent it "held that assault on a public servant in violation of TEX. PEN. CODE § 22.01(b)(1) is a crime of violence" for the purposes of imposing a recidivist sentencing enhancement.  *United States v. Kelley*, 40 F.4th 276, 286 (5th Cir. 2022) (concluding that the Supreme Court's intervening decision in *Borden v. United States*, 141 S. Ct. 1817 (2021) overturned *Anderson*'s crime-of-violence holding); *see also United States v. Bates*, 24 F.4th 1017, 1019 (5th Cir. 2022) (stating that "*Anderson*'s specific holding . . . that Texas assault of a public servant qualifies as a crime of violence under the former Sentencing Guidelines' residual clause . . . was abrogated by the Supreme Court in *Johnson v. United States*[, 576 U.S. 591, 597 (2015),] when it held the residual clause was unconstitutionally vague").  To the extent *Anderson* holds that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment, however, it remains binding precedent.  *See, e.g.*, *United States v. Guanespen-Portillo*, 514 F.3d 393, 402–03 (5th Cir. 2008) (following Fifth Circuit precedent that the Supreme Court had abrogated in part on other grounds).

declare Section 922(g)(1) unconstitutional notwithstanding the long line of pre-*Bruen* Fifth Circuit cases upholding it.  Mot. at 4.

In *Bruen*, the Supreme Court ruled that New York's policy of issuing public-carry handgun licenses "only when an applicant demonstrates a special need for self-defense" violated the Second Amendment.  142 S. Ct. at 2122.  Expanding on its earlier holdings in *Heller*[7] and *McDonald v. Chicago*[8] that the Second Amendment "protect[s] the right of an ordinary, law-abiding citizen to possess a handgun *in* the home for self-defense," the *Bruen* Court held that the Second Amendment likewise "protect[s] an individual's right to carry a handgun for self-defense *outside* the home." *Id.* (emphasis added).

Between *Heller* and *Bruen*, many federal Courts of Appeals—including the Fifth Circuit[9]—had adopted a "two-step test" to determine whether a firearms regulation violated the Second Amendment.  *Id.* at 2125–27 & n.4.  Under that framework, the court would first "determine whether the challenged law impinges upon a right protected by the Second Amendment."  *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016) (quoting *Nat'l Rifle Ass'n of Am., Inc. v. ATF*, 700 F.3d 185, 194 (5th Cir. 2012) ("*NRA*")).  "To make that determination," the court would "look to whether the law harmonizes with the historical traditions associated with the Second Amendment."  *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020)

---

[7] 554 U.S. at 573–636 (holding that the District of Columbia's "prohibition on the possession of usable handguns in the home violate[d] the Second Amendment").

[8] 561 U.S. 742, 791 (2010) (plurality opinion) (holding that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*"—*i.e.*, requires the States to honor the federally-guaranteed right to possess a handgun in the home for self-defense).

[9] *See, e.g.*, *United States v. McGinnis*, 956 F.3d 747, 753–59 (5th Cir. 2020); *Hollis v. Lynch*, 827 F.3d 436, 446–47 (5th Cir. 2016); *Nat'l Rifle Ass'n of Am., Inc. v. ATF*, 700 F.3d 185, 194–98 (5th Cir. 2012) ("*NRA*").  *But see McGinnis*, 956 F.3d at 761–62 (Duncan, J., concurring) (conceding that Fifth Circuit precedent required the panel to apply the "two-step framework," but calling for *en banc* review to "retire th[at] framework in favor of" an analytical approach similar to that which the Supreme Court ultimately adopted in *Bruen*).

(quoting *NRA*, 700 F.3d at 194). If the law burdened conduct that fell "outside the scope of the Second Amendment," the court would end the inquiry and uphold the law. *Id*.

If, however, the law *did* affect a right that the Second Amendment protects, courts applying the two-step test would then "determine whether to apply intermediate or strict scrutiny to the law" and evaluate "whether the law survive[d] the proper level of scrutiny." *NRA*, 700 F.3d at 194. The applicable level of scrutiny would depend "on the nature of the conduct being regulated and the degree to which the challenged law burden[ed] the right." *Id*. at 195 (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)). A "regulation that threaten[ed] a right at the core of the Second Amendment"—such as "the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family"—would "trigger[] strict scrutiny," *id*., and the court would uphold the law only if it was "narrowly drawn to provide the least restrictive means of furthering a compelling state interest." *McGinnis*, 956 F.3d at 754 (quoting *Dart v. Brown*, 717 F.2d 1491, 1498 (5th Cir. 1983)). By contrast, a "less severe regulation" that did "not encroach on the core of the Second Amendment" would trigger "'intermediate' scrutiny," and the court would uphold it so long as the court perceived "a 'reasonable fit' between the challenged regulation and an 'important' government objective." *NRA*, 700 F.3d at 195 (quoting *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010)).

The *Bruen* Court concluded that this two-step approach contained "one step too many." 142 S. Ct. at 2127. Although the Supreme Court opined that step one of the test was adequately "rooted in the Second Amendment's text, as informed by history," the Court determined that neither text, history, nor precedent authorized courts to apply "means-end scrutiny" at the test's second step. *Id*. The Court explained that "the very enumeration of [a] right" in the Constitution "takes out of the hands of government—even the [Judiciary]—the power to decide on a case-by-

case basis whether the right is *really worth* insisting upon," as the strict scrutiny and intermediate scrutiny tests purportedly empowered judges to do.  *Id*. at 2129 (quoting *Heller*, 554 U.S. at 634).

Instead, held the *Bruen* Court, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Id*. at 2129–30.  To successfully defend a firearms law that restricts such conduct, the government bears the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2130.  "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"  *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

In a footnote, the Supreme Court explicitly cited the Fifth Circuit's pre-*Bruen* opinion in *NRA*—which rejected constitutional challenges to federal laws that prohibited federally-licensed firearms dealers from selling handguns to persons younger than 21, *see NRA*, 700 F.3d at 188 (upholding 18 U.S.C. § 922(b)(1) and (c)(1) and their implementing regulations)—as an example of a case adopting the incorrect two-step test that *Bruen* disavowed.  *Bruen*, 142 S. Ct. at 2126–27 & n.4 (citing *NRA*, 700 F.3d at 194–95).

Applying its new standard to New York's public-carry license law, the *Bruen* Court concluded that New York had "failed to meet [its] burden to identify an American tradition justifying [its] proper-cause requirement."  142 S. Ct. at 2138.  Based on its review of historical sources, the Court concluded that, "[a]part from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms"—such as handguns—"for personal defense."  *Id.* at 2156.  "Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to

'demonstrate a special need for self-protection distinguishable from that of the general community' in order to carry arms in public," as the challenged New York law did. *Id.* (quoting *Klenosky v. N.Y.C. Police Dep't*, 428 N.Y.S.2d 256, 257 (N.Y. App. Div. 1980)). The Court accordingly declared the New York law unconstitutional. *Id.* at 2138.

**C.    This Court Has No Power to Declare that *Bruen* Overturned Pre-*Bruen* Fifth Circuit Opinions Upholding Section 922(g)(1)**

Defendant insists that *Bruen* overrules the pre-*Bruen* Fifth Circuit cases upholding 18 U.S.C. § 922(g)(1). Mot. at 3–4 & n.3. He argues that, because Section 922(g)(1) "prohibits individuals from exercising the most fundamental Second Amendment right—the right to possess a firearm for protection," *id.* at 4, "the Second Amendment's plain text covers" the conduct that Section 922(g)(1) prohibits, *see Bruen*, 142 S. Ct. at 2129. Thus, he claims, Section 922(g)(1) is presumptively unconstitutional under *Bruen*. *See* Mot. at 4. According to Defendant, there were no Founding-era laws "broadly prohibiting firearm possession by felons," so the Government cannot satisfy its burden to "show that the statute is consistent with historical traditions." *Id.* at 4, 10.

"[F]or a Supreme Court decision to change [the Fifth] Circuit's law," however, the intervening Supreme Court case "must be more than merely illuminating with respect to the case before the court;" it "must unequivocally overrule prior precedent." *In re Bonvillian Marine Service, Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (cleaned up) (quoting *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012)). "Th[at] bar . . . is high." *Gruver v. La. Bd. of Supervisors*, 959 F.3d 178, 181 (5th Cir. 2020). Although "there is no hard-and-fast requirement . . . that a Supreme Court decision explicitly overrule the circuit precedent at issue, or specifically address the precise question of law at issue," a party challenging a prior Fifth Circuit case's precedential effect must at least show that the earlier decision "has fallen

unequivocally out of step with some intervening change in the law." *Bonvillian*, 19 F.4th at 792. That may occur, for instance, "when the Supreme Court disavows the mode of analysis on which [the Fifth Circuit] relied," *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018), or when the "intervening Supreme Court decision fundamentally changes the focus of the relevant analysis," *Bonvillian*, 19 F.4th at 792 (cleaned up). "A mere hint of how the Supreme Court might rule in the future," by contrast, "will not suffice." *Stokes*, 887 F.3d at 204 (cleaned up).

The Court doubts whether the pre-*Bruen* Fifth Circuit cases upholding Section 922(g)(1) are in fact as irreconcilably inconsistent with *Bruen* as Defendant maintains. None of those cases expressly applied the two-part test that *Bruen* abrogated.[10] To the contrary, all of the cases build their foundation on *Emerson*,[11] which based its conclusion that "felons . . . may be prohibited from possessing firearms" on historical analysis, and did not explicitly apply means-end scrutiny or interest-balancing. *See* 270 F.3d at 226 n.21, 261; *see also United States v. Grinage*, No. 21-CR-00399, 2022 WL 17420390, at *3 (W.D. Tex. Dec. 5, 2022) (concluding that *Emerson*, *Scroggins*, and *Anderson* all appropriately "relied on a textual and historical analysis to find § 922(g)(1) constitutional," and therefore that "[n]othing in the *Bruen* decision calls into question the precedential effect of Fifth Circuit decisions finding § 922(g)(1) constitutional based on the Second Amendment's text and history"); *Davis v. United States*, No. 4:22-CV-1000, 2023 WL 129599, at *4 (N.D. Tex. Jan. 9, 2023) (concluding that *Darrington* survives *Bruen*). *But see*

---

[10] *See Massey*, 849 F.3d at 265; *Scroggins*, 599 F.3d at 451; *Anderson*, 559 F.3d at 352; *Everist*, 368 F.3d at 519; *Darrington*, 351 F.3d at 633–34; *Emerson*, 270 F.3d at 260–65.

[11] *See Darrington*, 351 F.3d at 633–34 (citing *Emerson*, 270 F.3d at 226 n.21, 260–61); *Everist*, 368 F.3d at 519 (citing *Emerson*, 270 F.3d at 260–61); *Anderson*, 559 F.3d at 352 (basing its holding on *Darrington*, which in turn based its holding on *Emerson*); *Scroggins*, 599 F.3d at 451 (relying on *Emerson*, *Darrington*, *Everist*, and *Anderson*); *Massey*, 849 F.3d at 265 (following *Anderson*, which in turn followed *Darrington*, which in turn followed *Emerson*). *But see Massey*, 849 F.3d at 255 (also citing *NRA*, which the Supreme Court explicitly abrogated in *Bruen*).

*McGinnis*, 956 F.3d at 755 (retroactively construing *Emerson* as "applying some form of means-end scrutiny *sub silentio*" in an attempt to reconcile *Emerson* with the two-part test that the Fifth Circuit adopted in *NRA* (and that the Supreme Court later abrogated in *Bruen*)).

But the Court need not—and in fact *cannot*—decide whether *Bruen* abrogates the pre-*Bruen* Fifth Circuit cases upholding Section 922(g)(1). That is because the Fifth Circuit's opinion in *Bonvillian* indicates that District Courts have no power to declare that an intervening Supreme Court case inters an otherwise-binding Fifth Circuit case. In *Bonvillian*, the Fifth Circuit considered whether the Supreme Court's 2015 decision in *Kwai Fun Wong*[12] required the Fifth Circuit to overturn its 2012 decision in a case called *Eckstein*.[13] 19 F.4th at 789. In doing so, the court emphasized that the district court below had "*correctly found itself bound* by the rule [the Fifth Circuit] set forth in *Eckstein*," and "*was not free to overturn*" *Eckstein*. *Id.* at 789–90 (emphasis added). Instead, the Fifth Circuit decided *for itself* in the first instance that *Eckstein* had "fallen out of step with the Supreme Court's most recent jurisprudence," and overturned *Eckstein* accordingly. *Id.*

That italicized language indicates that this Court is likewise "not free to overturn" the Fifth Circuit's pre-*Bruen* decisions upholding Section 922(g)(1). *See id.* This Court must instead "f[ind] itself bound" by those precedents, reject Defendant's challenge, and leave it to the Fifth Circuit to decide for itself whether its decisions survive *Bruen*. *See id.*; *see also United States v. Connelly*, No. 3:22-CR-229(2), 2022 WL 17829158, at *3 (W.D. Tex. Dec. 21, 2022) ("[T]his Court may not determine whether or how *Bruen* has changed Fifth Circuit precedents

---

[12] *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015).

[13] *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310 (5th Cir. 2012).

interpreting § 922; that question must be settled by the Fifth Circuit itself." (citing *Bonvillian*, 19 F.4th at 789)).

**D.     Even if this Court Had the Power to Declare that *Bruen* Overturned Fifth Circuit Precedent, this Court Would Follow District Court Cases Upholding the Statute**

Even if this Court did have the power to proclaim that *Bruen* overruled the pre-*Bruen* Fifth Circuit cases upholding Section 922(g)(1), it would follow the weight of authority of post-*Bruen* district court cases from this Circuit upholding the statute on the ground that it is consistent with the Nation's historical tradition of firearm regulation.[14]

**E.     Defendant's As-Applied Challenge**

Defendant argues in the alternative that "[e]ven if the Court determines that there are circumstances under which § 922(g)(1) would be constitutional, so as to not invalidate it *facially*, the statute violates the Second Amendment *as applied* to" Defendant because his felony convictions were for non-violent theft and fraud offenses.[15] Mot. at 11–14 (emphasis added); *see*

---

[14] *See, e.g.*, *United States v. Cage*, No. 3:21-CR-68, 2022 WL 17254319, at *2 (S.D. Miss. Nov. 28, 2022) ("§ 922(g)'s restriction on possession of firearms by felons has a long and established history in English and American common law." (cleaned up)); *United States v. Hill*, No. 22-249, 2022 WL 17069855, at *5 (S.D. Tex. Nov. 17, 2022) ("[F]elon-in-possession statutes are within our historical tradition of firearm regulation.").

This Court would uphold the statute on that ground without expressing any opinion on whether the law is constitutional on the alternate ground that the Second Amendment's reference to "the people" excludes felons. *Compare, e.g.*, *Hill*, 2022 WL 17069855, at *5 ("Felons are not covered under the plain text of the Second Amendment, which affords protection only to the political community."), *and United States v. Charles*, --- F. Supp. 3d ----, 2022 WL 4913900, at *12 (W.D. Tex. Oct. 3, 2022) (upholding Section 922(g)(1) on the ground that "this Nation has a longstanding history of excluding felons from the rights of 'the people'"), *with United States v. Coombes*, No. 22-CR-00189, 2022 WL 4367056, at *4, *8 (N.D. Okla. Sept. 21, 2022) ("declin[ing] to carve out felons from the scope of the Second Amendment's protection of 'the people,'" and instead upholding Section 922(g)(1) on the ground that it "is consistent with the Nation's historical tradition of firearm regulation" (cleaned up)).

[15] "When a litigant brings both as-applied and facial challenges," courts "generally decide the as-applied challenge first because it is the narrower consideration." *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019). "For the purposes of analytical clarity, however," Defendant has "address[ed] his facial challenge first." Mot. at 5. This Court has therefore done the same.

*also* Reply at 1, 13–15. According to Defendant, even if there were "a historical tradition of disarming certain *dangerous* felons" (which Defendant does not concede), "there is no such tradition of disarming *non-violent* offenders with criminal records like" Defendant's. Reply at 13 (emphasis added).

In *Everist*, however, the Fifth Circuit opined that "[i]rrespective of whether his offense was violent in nature," "a felon has shown manifest disregard for the rights of others," and therefore "may not justly complain of the limitation on his liberty" because "his possession of firearms would otherwise threaten the security of his fellow citizens." 368 F.3d at 519 (emphasis added). Although *Everist* involved "a facial constitutional challenge to § 922(g)(1)" rather than an as-applied challenge, the opinion's language indicates that Section 922(g)(1)'s constitutionality does not depend on whether a felon's prior offense was violent. *See id.* Likewise, *Scroggins* explicitly holds that "criminal prohibitions on felons (violent *or nonviolent*) possessing firearms" do not contravene the Second Amendment. 599 F.3d at 451 (emphasis added). As discussed above, this Court must follow *Everist* and *Scroggins* until and unless the Fifth Circuit declares that those cases do not survive *Bruen*. *See Bonvillian*, 19 F.4th at 789–90. And even if this Court did have the power to pronounce *Everist* and *Scroggins* moribund after *Bruen*, this Court would follow the weight of post-*Bruen* authority from district courts in this Circuit rejecting identical as-applied challenges to Section 922(g)(1).[16] This Court therefore rejects Defendant's as-applied challenge to Section 922(g)(1) as well.

---

[16] *See, e.g.*, *United States v. Melendrez-Machado*, --- F. Supp. 3d ----, 2022 WL 17684319, at *6 (W.D. Tex. Oct. 18, 2022) ("Historical tradition from the founding era supports disarming unvirtuous individuals who have committed crimes . . . The category of 'unvirtuous citizens' is . . . broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or nonviolent." (cleaned up)); *United States v. Banuelos*, No. 22-CR-00903, 2022 WL 17752205, at *5 (W.D. Tex. Nov. 10, 2022) (concluding that "*Bruen* did not disturb" the Fifth Circuit's pre-*Bruen* holding "that prohibitions on felons (violent or nonviolent) possessing firearms do not violate the Second Amendment" (cleaned up)).

- 15 -

### III.   CONCLUSION

The Court therefore **REJECTS** Defendant James Douglas Jordan's Second Amendment challenges to 18 U.S.C. § 922(g)(1) and **DENIES** "Defendant's Motion to Dismiss Indictment" (ECF No. 28).

**So ORDERED and SIGNED this 11th day of January 2023.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**